**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BOBBY JONES,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:19-CV-01650-L** |
| | § | |
| | § | |
| | § | |
| **STATE FARM MUTUAL** | § | |
| **AUTO INSURANCE COMPANY** | § | |
| | § | |
| *Defendant.* | § | |

## JOINT STATUS REPORT REGARDING PLAINTIFF'S RESPONSES TO DEFENDANT'S DISCOVERY REQUESTS

**TO THE HONORABLE JUDGE DAVID L. HORAN:**

Pursuant to Section 3 of the Court's Standing Order on Discovery and Other Non-Dispositive Motions (Sept. 24, 2019) [ECF No. 16], Plaintiff Bobby Jones ("Plaintiff" or "Jones") and Defendant State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm") hereby file this Joint Status Report regarding State Farm's motion to compel discovery responses from Jones.  Set forth below are each of the discovery responses at issue, as well as a summary of the parties' positions as to each such request.  Copies of the requests and responses are being filed herewith in a separate joint appendix, in accordance with Section 3 of the Court's Standing Order on Discovery and Other Non-Dispositive Motions.

The parties' counsel (Monte Hurst, Elizabeth Fitch, Ashley Tremain, and Carmen Artaza) conferred over the phone about these requests on December 20, 2019.  While they reached agreements on some of the matters, the parties' counsel were unable to resolve their disputes as to the issues addressed below.

A.   **Plaintiff's Second Set of Supplemental Responses and Objections to Defendant's First Set of Requests for Production**

**REQUEST NO. 10:**
Please produce any correspondence, memoranda and/or other transcribed documentation between State Farm and any other party, entity or individual, including but not limited to you, regarding this Lawsuit.

| Defendant's Position | |
|---|---|
| | • Jones objects to this Request on the grounds that it seeks work product. Specifically, Jones has indicated that he exchanged text messages with one unnamed former State Farm colleague. This Court has thoroughly detailed the proper analysis in a discovery dispute involving a claim of work product protection, along with what a party asserting the privilege must show.[1] Among the considerations relevant here are: |
| |    o  The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial.[2] A general allegation of work product is insufficient to meet this burden.[3] The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product.[4] Thus, this Court rejected a claim of work product where the defendants claiming the work product protection simply described the "sought-after documents as 'text messages discussing this lawsuit,'" but did not offer affidavits or other documents to support their assertion of the work product privilege.[5] Instead, this Court determined that the text messages were simply communications about the lawsuit, unless and until the party claiming the protection came forward with evidence showing otherwise.[6] |
| |    o  If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials |

---

[1] *See, e.g., Dartson v. Villa*, No. 3:17-CV-569-M, 2018 WL 3528721, at *7-8 (N.D. Tex. Apr. 2, 2018); *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 463-64 (N.D. Tex. 2016); *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 884742, at *2-3 (N.D. Tex. Feb. 27, 2014).

[2] *Trombetta*, 2014 WL 884742, at *2.

[3] *Id.*

[4] *Id.*

[5] *Id.*, at *3.

[6] *Id.*

should still be produced.[7]   A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship.[8]  If the materials sought are opinion work product, then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information.[9]

- o   In addition, while a document need not be generated in the course of an ongoing lawsuit to qualify for work product protection, the "primary motivating purpose" behind the creation of the document must be to aid in possible future litigation.[10]  Among the factors relevant to determining the primary motivation for creating a document are the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.[11]  If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.[12]

- ●   Here, Jones has in no way met his burden to show that the work product privilege applies.  He has not revealed when the communications occurred, with whom he communicated, or whether the communications took place at the direction of Jones' counsel.  Rather, based on the information Jones has provided, these communications are nothing more than discussions between former colleagues about this lawsuit and are not privileged.

- ●   Jones also objects to this Request because communications between Jones and State Farm's attorneys or representatives are already in possession of State Farm or its counsel.  However, "the rules of discovery do not permit parties to withhold

---

[7] *Mir*, 315 F.R.D. at 464.

[8] *Id.*

[9] *Id.*

[10] *Mir*, 315 F.R.D. at 463.

[11] *Id.*

[12] *Id.*

| | |
|---|---|
| | material simply because the opponent could discover it on his or her own."[13] |
| **Plaintiff's Position** | • Jones is withholding one document in response to this request: a short text message between him and former coworker, in which Jones seeks to investigate information regarding his claims in this case, which occurred after Jones obtained counsel and began work on his lawsuit in this case. Jones is willing to produce this document *in camera* so that the Court can make a determination as to its status. |
| | • Tex. R. Civ. P. 192.5(a)(2) protects from discovery "material prepared or mental impressions developed in anticipation of litigation...by...<u>a party</u>," or "the party's attorneys." The protection is not limited just to counsel's activities. See e.g. *S.E.C. v. Goldstone*, 301 F.R.D. 593, 652(D.N.M. 2014) ("Unlike the attorney-client privilege, both the attorney and the client hold the right to work-product protections, and either may assert it." (citing In re Grand Jury Subpoenas, 561 F.3d 408, 411 (5th Cir.2009)). In Elec. Data Sys. Corp. v. Steingraber, 4:02 CV 225, 2003 WL 21653405, at *1 (E.D. Tex. July 9, 2003), the defendant properly provided a list of 59 "persons with knowledge of relevant facts." But the plaintiff wanted more. It asked the defendant to identify which of those individuals had been interviewed. When defendant refused, plaintiff sought to compel information on which witnesses had been interviewed. The Court held that "revealing the identity of witnesses interviewed would permit opposing counsel to infer which witnesses counsel considers important, thus, revealing mental impressions and trial strategy." Because these sorts of "evaluations and strategies are at the heart of the work product rule," the objections were sustained. |
| | • State Farm argues that this reasoning should not apply, because in this case, the interview at issue were conducted by Claimant himself instead of by Claimant's counsel. But documents are protected when they are prepared <u>for</u> an attorney who "was preparing for or anticipating some sort of adversarial proceeding involving his or her client." *Onwuka v. Fed. Express Corp.,* 178 F.R.D. 508, 513 (D. Minn. 1997) (emphasis added). See also *United States v. Nobles*, 422 U.S. 225, 239 (1975) ("...attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared |

---

[13] *Abraham v. Cavender Boerne Acquisition of Texas, Ltd.*, No. SA-10-CA-453-XR, 2011 WL 13127173, at *6 (W.D. Tex. Apr. 26, 2011) (quoting *Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d 425, 428 (6th Cir. 1996)).

by agents for the attorney as well as those prepared by the attorney himself."). And regardless of who conducted the interview, information as to who was interviewed, when, and what was discussed, necessarily reveals counsel's mental impressions when those interviews reflect counsel's instruction.

● Defendant cannot show a "substantial need" for these documents because they do not contain any information that is relevant, or likely to lead to the discovery of relevant, evidence in this case. All witnesses with knowledge of relevant facts have been disclosed in Plaintiff's Rule 26(a) disclosures.

● See also *Langley v. International Business Machines Corporation*, Case No. A-18-CV-443- LY, 2019 U.S. Dist. LEXIS 61543 (W.D. Tex. April 10, 2019) (Plaintiff was not required to disclose the identities of the witnesses he communicated with to investigate his claims, where Plaintiff "did not rely on any statements of anonymous IBM employees to support his claims" and "the identities of the individuals...is irrelevant to IBM's defense").

● State Farm's additional request for the production of all communications between Jones or his counsel and State Farm's attorneys or representatives is simply absurd. Jones has already represented that there are no communications between him and State Farm's attorneys. As for communications between Jones' attorneys and State Farm's attorneys, State Farm is apparently insisting on reproduction of the countless emails between counsel in this case. Statements of counsel are not relevant to any matter in this case. And this request is unnecessary and burdensome - State Farm's counsel is a party to all of the communications at issue. Their request to have Plaintiff's counsel print off all of these emails and reproduce them to Defendant's counsel - who already has them - is nothing short of harassing.

● Defendant argues that its equal access to these documents is irrelevant. That's not the case under the Federal Rules, which state that discovery is limited to matters "*relevant* to any party's claim or defense and proportional to the needs of the case, considering...the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1).

**REQUEST NO. 12:**

Please produce any non-privileged statements made by you or any of your agents, attorneys, representatives and/or employees as it may pertain to this Lawsuit.

| Defendant's Position | ● Jones objects to this Request on the ground that the word "statement" is not defined.  Jones's objection is puzzling because Jones actually responds that he has no documents responsive to this Request, indicating that he is able to discern the meaning of the word "statement."   If Jones has no documents responsive to this Request, he should simply say so and withdraw his objections.[14] |
|---|---|
| Plaintiff's Position | ● Jones objected to this Request because State Farm did not provide a definition for the term "statement," and the term statement can have more than one meaning (i.e. a witness statement versus a written statement that is not otherwise signed or adopted). Plaintiff inserted the definition of the term "statement" as he understood it and responded to the discovery request based on the definition. |

**REQUEST NO. 13:**

Please produce all documents in your possession, custody, or control relating to, referencing or regarding communications between you and/or your agent and State Farm or any agent, representative, personnel or employee of State Farm.

| Defendant's Position | ● Jones claims that this Request is duplicative of RFP No. 10 and, therefore, asserts the same objections to RFP No. 13 as he did to RFP No. 10.  Therefore, please see State Farm's position herein regarding RFP No. 10. |
|---|---|
| Plaintiff's Position | ● Please see Plaintiff's response/position in reference to Request for Production No. 10. |

**REQUEST NO. 16:**

Please produce all photographs, charts or exhibits that you intend to use at trial of this matter.

| Defendant's Position | ● Jones refuses to respond to this Request, instead asserting the work product privilege and stating that he would instead comply with the Court's scheduling order.  However, as addressed in detail above, the work product privilege only protects from |
|---|---|

---

[14] *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

| | |
|---|---|
| | disclosure documents a party or its representative prepared in anticipation of litigation.[15]  Documents that Jones intends to use as an exhibit that were not prepared by him, his representatives, or his attorneys in anticipation of litigation are not work product by definition. |
| **Plaintiff's Position** | • At this stage of the case, asking Mr. Jones to produce all photographs, charts or exhibits that he *intends* to use at trial is requesting attorney work product. Whether the documents were prepared by Mr. Jones or his attorneys in anticipation of litigation is not the appropriate inquiry.  Rather, the Request invades attorney work product because, State Farm is requesting that Mr. Jones (and his attorneys) compile a list of documents that he believes are important to his case at this stage (and, presumably, to update that list throughout the discovery period). This necessarily will reveal Mr. Jones' attorneys' trial preparation strategies and mental impressions.<br><br>• As noted in Mr. Jones' response, he has already complied with, and will continue to comply with the disclosure requirements, and he will provide a trial exhibit list at the appropriate time, in accordance with the Court's Scheduling Order. |

**REQUEST NO. 23:**
Please produce your retainer agreement with your lawyer.

| | |
|---|---|
| **Defendant's Position** | • Jones objects that this Request seeks information subject to the attorney-client privilege.  However, the attorney-client privilege generally protects only confidential communications between the client and attorney and extends to the attorney fee arrangements only when the fee agreement is connected inextricably with a privileged communication.[16]   Jones has made no effort to establish that his retainer agreement with his counsel in this case is inextricably connected with a privileged communication.<br><br>• Jones further objects to this Request on the grounds that it contains proprietary and trade secret information of his counsel. Jones has made no effort to establish the applicability of the trade-secret privilege.  In addition, it would appear that the |

---

[15] *See Trombetta*, 2014 WL 884742, at *2.

[16] *Jackson v. Cty. of Bexar*, No. SA-07-CA-928-FB, 2009 WL 10699965, at *8 (W.D. Tex. Oct. 1, 2009).

| | |
|---|---|
| | concerns underlying this objection are his attorneys', not Jones', and his attorneys are not parties to this case.<br><br>● Finally, Jones objects to this Request as seeking information that is not relevant to any claim or defense in this case. However, Jones is seeking the recovery of his attorney's fees in this case.[17]  Therefore, his contract with his attorneys reflecting what those fees would be is reasonably calculated to lead to the discovery of admissible evidence.[18] |
| **Plaintiff's Position** | ● Plaintiff objects to producing the fee agreement because it: (a) contains instructions and information that are protected by the attorney-client privilege; and (b) contains proprietary trade secret and business information of Tremain Artaza PLLC. The fee agreement is lengthy and contains explicit instructions, guidelines, and advice from the attorneys to the client.  If the Court requires proof of this fact, Plaintiff can produce a copy of the fee agreement *in camera*.<br><br>● More importantly, this document is not relevant to any claim or defense in this case. Attorneys' fees petitions, if any, are not presented in federal court until after a jury verdict is reached (see Fed. R. Civ. P. 54), and even then, the nature of a Plaintiff's agreement with his attorney is not a relevant factor in determining the fee award. *Blanchard v. Bergeron*, 489 U.S. 87, 87–88, (1989) (holding the court cannot rely on the nature of a civil rights plaintiff's private fee arrangement to cap or reduce the lodestar); *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) ("enhancement for contingency is not permitted under the fee-shifting statute"); *Rutherford v. Harris County*, 197 F.3d 173, 193 (5th Cir. 1999 ("the Supreme Court has barred any use of this factor.") (internal citations omitted). |

**REQUEST NO. 24:**

Please produce all documents, income statements, expenses, statements, bills and/or invoices which reflect in any way damages you are seeking to recover in this Lawsuit.

---

[17] *See* Plaintiff's Original Complaint and Jury Demand (July 10, 2019) [ECF No. 1] (the "Complaint"), at ¶¶ 28, 39 50, and 51.

[18] *Coleman v. Credit Mgmt. LP*, No. 3:10-CV-02312-M-BK, 2011 WL 13128820, at *2 (N.D. Tex. July 13, 2011) (granting motion to compel production of document's pertaining to plaintiff's claim for attorney's fees, including fee arrangements and engagement records).

| | |
|---|---|
| **Defendant's Position** | ● Jones acknowledges in his response to this Request that he is seeking the recovery of his attorney's fees in this lawsuit. However, he refuses to provide any invoices or other documents from his attorneys, stating that he is not required to produce such documents until post-trial.  Jones cites Federal Rule of Civil Procedure 54 as support for his position, but nothing in Rule 54 permits a party to refuse to produce invoices for legal services until after trial.  As the Court knows, part of the litigation process involves analysis by each party of its risks and exposure.  Should State Farm be forced to wait until after a verdict is rendered in this case, it would have been robbed of the opportunity to adequately analyze its position in this lawsuit. |
| | ● Jones cites to a number of cases in support of his position, none of which should be persuasive to this Court.  Two of Jones's cases are state court opinions decided under state court law.[19] Of the remaining cases cited by Jones, only one is from a Texas federal district court.[20]  However, federal district courts in Texas—including at least one in the Northern District—have held that fee statements and retainer agreements are discoverable at this stage in the litigation.[21]  The rationale in *Coleman* is particularly persuasive here, in light of State Farm's position that it needs Jones's billing information to analyze its risks and exposure in this lawsuit: "The Court finds that granting Defendant's Motion to Compel (Doc. 16) will promote settlement and encourage a just, speedy, and inexpensive determination because Defendant will be able to assess its potential liability in the case that Plaintiff prevails."[22] |
| **Plaintiff's Position** | ● Regarding the request for billing statements, Plaintiff objects because this would require disclosure of attorney work product and mental impressions. |
| | ● Plaintiff further objects because at this stage of the litigation, discovery of billing records is premature under Fed. R. Civ.P. 54 - and therefore not relevant.  Billing records are not relevant to the <u>claims</u> (as defined by Fed. R. Civ. P. 8a) in this case, and Defendant has articulated no valid reason why it needs to pursue counsel's records *during the course of litigation* instead in |

---

[19] *See Khoobehi Properties, LLC v. Baronne Dev. No. 2, L.L.C.*, 16-506 (La. App. 5 Cir. 3/29/17); *In re Estate of Ransburg*, 608 So. 2d 49, 50-51 (Fla. Dist. Ct. App. 1992); *Rodriguez v. Board of Education*, 620 F.2d 362, 367 (

[20] *Barahona v. Landry's Crab Shack, Inc*., Case No. 3:02-cv-2223 (N.D. Tex. April 30, 2003).

[21] *See Coleman*, 2011 WL 13128820, at *2; *Hernandez v. Scott*, No. SA-10-CV-1051 OG NN, 2011 WL 2619342, at *1 (W.D. Tex. July 1, 2011); *see also Simon v. State Farm Lloyds*, No. 7:14-CV-251, 2015 WL 12777219, at *5 (S.D. Tex. Apr. 9, 2015).

[22] *Coleman*, 2011 WL 13128820, at *2.

connection with a fee petition. See cases below, including an analysis of why the *Coleman* case relied upon by Defendants is inapplicable:

● *Barahona v. Landry's Crab Shack, Inc*., Case No. 3:02-cv-2223 (N.D. Tex. April 30, 2003 (Stickney) (discovery about plaintiff's claim for attorneys' fees was premature until plaintiff became a "prevailing party");

● *Khoobehi Props., LLC v. Baronne Dev. No. 2, L.L.C*., No. 16-506, 216 So. 3d 287, 304 (5th Cir. March 29, 2017) (upholding trial court's denial of discovery as to plaintiff's fee agreement with its counsel and counsel's billing records, where plaintiff argued that such discovery was premature until plaintiff became a prevailing party);

● *Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-cv-548-Orl-22GJK, 2016 U.S. Dist. LEXIS 182105, at *15 (M.D. Fla. Mar. 14, 2016) ("The amount of attorneys' fees and costs, and any discovery related thereto is usually a collateral matter to be determined at the conclusion of the case.");

● *In re Estate of Ransburg*, 608 So. 2d 49, 50-51 (Fla. Dist. Ct. App. 1992) (denying discovery related to plaintiff's request for attorneys' fees where no order had yet been entered which would entitle the plaintiffs to receive an award of attorney's fees);

● *Rodriguez v. Board of Education*, 620 F.2d 362, 367 n.1 (2nd Cir. 1980) ("§2000e-5(k) is applicable only upon victory on the merits in the trial court.");

● *Abels v. JBC Legal Group*, *P.C*., 233 F.R.D. 645 (N.D. Cal. 2006) ("Although Abels may be entitled to claim and recover attorney fees by post-trial motion should he prevail in this action, there is no basis at this stage of the proceedings to require him to produce records of his fees incurred to date. Because JBC has also failed to show that production of the fee agreement between Abels and his counsel is reasonably calculated to lead to the discovery of admissible evidence, the motion to compel will be denied in its entirety.").

- The Coleman case relied upon by Defendant is distinguishable on multiple fronts:

  - Coleman involved claims under the Fair Debt Collection Practices Act (FDCPA), not Title VII. This is important because the FDCPA, unlike Title VII, defines attorneys' fees as an statutorily mandated element of the damages awarded for that claim. Title VII, in contrast, treats attorneys fees as a *discretionary* recoverable cost. See e.g. 42 USC 2000e-5 ("the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs"). Costs, unlike damages, are not relevant to a plaintiff's underlying "claim" as defined by Rule 8(a). They therefore are not "relevant to any party's <u>claim</u>," as they must be to be within the scope of discovery under Fed. R. Civ. P. 26(b)(1).

  - One reasoning in *Coleman* - that "the attorney's fees comprise the most significant portion of the potential award to Plaintiff" - is not applicable in this case. In *Coleman*, the Plaintiff sought only a $1,000 statutory fee, and attorneys fees. Attorneys' fees were far and away the most significant portion of any potential award. That is not the case here. Plaintiff seeks lost wage damages potentially through retirement, as well as compensatory and punitive damages up to $300,000. Attorneys fees are not the primary element of the Plaintiff's recovery in this case.

  - The other reasoning in *Coleman* - that discovery of attorneys' fees would enable the Defendant "to assess its potential liability" - is unpersuasive in this case. All of the attorneys in this case are experienced employment counsel (Defendant's lead counsel has been practicing for 24 years), and they all know full well how many hours it typically takes to prosecute a claim of this nature. Plaintiffs counsel has already disclosed the hourly lodestar rate it will seek, and an approximation of the number of hours it will take to bring this case to trial. They have also offered to provide Defendant's counsel with periodic updates on the number of hours they have spent in the case, for purposes of settlement discussions. None of this, however, was enough for Defendant's counsel -- which shows that the true intent behind this

request has nothing to do with settlement analysis.   In fact, Defendant's counsel has already represented on several occasions that Defendant has no interest in engaging in settlement discussions in this case.  The true intent of this request is to harass Plaintiff's counsel and dig into their protected work product.

    o  Finally, *Coleman* only addressed a relevance objection. The plaintiff in Coleman does not appear to have asserted, and the Court  did not analyze, the separate issues of privilege raised here.

- Furthermore, if the Court grants State Farm's request – and finds that it is appropriate for the parties to conduct fee-related discovery at this time – Plaintiff would then have no choice but to propound such discovery to State Farm, seeking *its* counsel's fee agreement and substantiation of its work on this case. This type of information is considered relevant to an award of fees to a prevailing plaintiff. *See Murray v. Stuckey's Inc.,* 153 F.R.D. 151, 153 (N.D. Iowa 1993) (granting the plaintiff's motion to compel and requiring defendant to produce information about the hours expended by its counsel, as well as defense counsel's hourly rates); *Henson v. Columbus Bank & Trust Co.,* 770 F.2d 1566, 1571-72 (11th Cir. 1985) (trial court abused its discretion by refusing discovery of number of hours spent preparing the defense); *Coalition to Save our Children v. State Board of Education of Delaware,* 143 F.R.D. 61 (D. Del. 1992) (time records, billing rates and out-of-pocket expenses found relevant and their production was ordered).  Requests for attorneys' fees should never result in a second major litigation.  *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). This is especially true when the plaintiff has yet to prevail, and fees are not yet relevant in the case. As a matter of practicality, Plaintiff urges the Court to reject State Farm's request, so that the parties do not become side-tracked – pre-trial – conducting discovery about a still irrelevant issue.

**REQUEST NO. 36:**

Please provide a true and correct copy of all text messages between you and a current or former State Farm employee between October 2018 and the present.

| Defendant's Position | • Jones objects to this Request, asserts the work product privilege, and responds that he is withholding communications between |
| --- | --- |

| | |
|---|---|
| | himself and a coworker.  State Farm respectfully directs the Court to its position herein as to RFP No. 10. |
| **Plaintiff's Position** | ● Please see Plaintiff's response/position to Request for Production No. 10. |

## REQUEST NO. 39:

Please provide a true and correct copy of all text messages between you and any person other than your attorney relating to the subject matter of this Lawsuit.

| | |
|---|---|
| **Defendant's Position** | ● Jones objects to this Request, asserts the work product privilege, and responds that he is withholding communications between himself and two former coworkers.  State Farm respectfully directs the Court to its position herein as to RFP No. 10. |
| **Plaintiff's Position** | ● With respect to Mr. Jones' correspondence with State Farm employees, please see Plaintiff's objection/position to Request for Production No. 10. Mr. Jones has not withheld any other documents pursuant to their Request. |

## REQUEST NO. 47:

Please complete, sign and return the attached Authorization to Disclose Protected Health Information.

| | |
|---|---|
| **Defendant's Position** | ● Jones first objects to this Request on the grounds that it is not reasonably calculated to lead to the discovery of admissible information.  Specifically, Jones argues that he did not seek medical treatment as a result of the discrimination he claims to have experienced while a State Farm employee and is not relying on any medical documentation or testimony to support his claims.  However, medical records are relevant to claims of mental anguish in discrimination cases, pursuant to the broad construction of relevance under Federal Rule of Civil Procedure 26(b)(1).[23]  In particular, even if Jones' mental conditions are not in controversy, his medical records can be relevant and discoverable if they shed light on other contributing causes to Jones' mental anguish.[24]  In fact, courts have almost universally held that, when a plaintiff seeks mental anguish damages, the defendant is entitled to discover medical evidence to find out if causes other than the defendant's alleged wrong caused the |

---

[23] *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005).

[24] *U.S. E.E.O.C. v. Guardsmark, LLC*, No. 4:09-CV-03062, 2010 WL 2756798, at *2 (S.D. Tex. July 12, 2010).

| | |
|---|---|
| | plaintiff's mental anguish.[25]   This is so even if a plaintiff represents that he/she will not present any expert medical testimony at trial.[26]  Here, while State Farm is certainly aware of the sensitive nature of Jones' medical records, it is entitled to know whether there were other causes of Jones' purported mental anguish. |
| Plaintiff's Position | • Plaintiff acknowledges that medical records may be relevant when a plaintiff asserts a claim for mental anguish damages. However, unlike the cases relied on by State Farm, Mr. Jones has represented: (1) he has not sought medical treatment as a result of his claims against State Farm;[27] (2) he does not intend to present expert medical testimony; and (3) he has not sought mental health treatment in the past ten years.   Given these representations, State Farm would be perusing Mr. Jones medical records for purely physical conditions, which is improper.[28] |
| | • State Farms' request for medical records over a ten (10) year period is also facially overbroad.  Indeed, in *Blummer,* a case relied on by State Farm the court held that although the plaintiff's psychiatric, psychological, and counseling records may be relevant to her mental anguish damages, the plaintiff was not required to sign the requested authorization because it was overly broad in that it sought medical records over a ten (10) year period.[29] |
| | • "[T]remendous potential for abuse exists when a defendant has unfettered access to a plaintiff's medical records." Burrell v. Crown Central Petroleum, 177 F.R.D. 376, 384 (E.D. Tex. 1997). As one Court put it, "the scope of discovery into this sensitive area should be limited and confined to that information |

---

[25] *Blummer v. United Space All., LLC,* No. CV H-09-0326, 2009 WL 10714911, at *2 (S.D. Tex. Aug. 6, 2009).

[26] *Id.*

[27] In *U.S. EEOC v. Guardsmark, LLC,* 2010 WL 2756798, at *2 -*3 (S.D. Tex. July 12, 2010) the plaintiff claimed she had sustained physical injuries "weight gain, high blood pressure, and depression" because of the defendant's discriminatory conduct. While the court ordered the plaintiff to produce her medical records, the order was limited to (1) the facilities/physicians where the plaintiff sought treatment for the conditions she alleged were caused by defendant; and (2) the time period was limited to the date she initially sought treatment for the symptoms to the present. *Id.* at 7.

[28] *Merill,* 227 F.R.D. at 473.

[29] *Blummer v. United Space All., LLC,* No. CV H-09-0326, 2009 WL 10714911, at *1-3 (S.D. Tex. Aug. 6, 2009). See also *U.S. E.E.O.C. v. Consolidated Realty, Inc.,* 2007 WL 1452967, *1-2 (D. Nev. 2007) (finding that a defendant is not entitled to information regarding every medical treatment that a plaintiff obtained over a ten (10) year period simply because the plaintiff's complaint alleged she suffered from emotional distress); and *Broderick v. Shad,* 117 F.R.D. 306, 309 (D.D.C. 1987) (denying defendant's motion to compel plaintiff's medical records over an eleven (11) year period where the plaintiff provided an affidavit stating that she had not received medical treatment as a result of the conditions alleged in her complaint).

that is essential to a fair trial." *Fritsch v. City of Chula Vista,* 196 F.R.D. 562, 570 (S.D. Cal. 1999).

- In this case, State Farm has not articulated any explanation of why it should be entitled to a decade's worth of Plaintiff's worth of medical history, in a case where his medical status is not at issue, and in which he has affirmatively stated that he is not relying on any medical testimony or documents, and in which he has affirmatively stated that he has not sought or obtained any mental health treatment.

- State Farm blindly seeks information that has no relevance to this case, including any and all information about his medical history and any and all of his prescriptions for medication. This is textbook impermissible fishing. *See Villareal v. Formosa Plastics,* Case. No. 6:18-cv-00024, Document 22, Filed in TXSD on 11/29/18, Judge Hoyt ("defendant has failed to establish good cause for this discovery...Therefore, the subpoena and the notice of deposition on written questions to Memorial Medical Center Clinic from the defendant is quashed and no records may be obtained pursuant to them."

- The cases that State Farm are distinguishable. In the *Guardsmark* case, the Court noted: "Birkner is claiming compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses." (Def.'s Memo, 1). It is true that Birker's claims, by themselves, do not place her physical and mental health at issue." *United States EEOC v. Guardsmark, LLC,* No. 4:09-cv-03062, 2010 U.S. Dist. LEXIS 69029, at *3 (S.D. Tex. June 12, 2010). It only ordered production of health records because in that case (unlike this one): "there has been a greater showing that Birkner's physical and mental condition has been placed in controversy. In her interrogatory, Birkner stated that she received medical treatment from We Care Affordable HealthCare, Dr. Baig, and Heart Care Center of Nwest Houston for "weight gain, high blood pressure, and depression" related to her injuries allegedly caused by Guardsmark. (Def.'s Memo, 2). This response indicates that Birkner's mental anguish claims are something more than the "garden variety" type of claims that are incidental to job related discrimination." *Id.* at *4. No such showing has been made in this case. And even in *Guardsmark*, the Court only permitted discovery of records "relevant to the physical and mental injuries Birkner allegedly sustained as a result of Guardsmark's

|  | tortious conduct." It did not permit broad, unlimited discovery of all of the Plaintiff's records. |
|  | • In *Blummer,* although the plaintiff's <u>psychiatric, psychological, and counseling</u> records may be relevant to her mental anguish damages, the plaintiff was not required to sign the requested authorization because it was overly broad in that it sought medical records over a ten (10) year period instead of just the time since the plaintiff's termination.[30]  Other medical records were relevant because this was a disability case.  None of these situations are applicable in this case.  There are no mental health records here, and this is not a disability case. |

## REQUEST NO. 48:

Please complete, sign and return the attached Authorization for Release of Personnel and Payroll Records.

| Defendant's Position | • Jones objects to this request on numerous grounds, including that it is unduly burdensome, harassing, and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Jones makes no effort to support these objections, rendering them nothing but perfunctory and boilerplate.[31]  Regardless, the information sought is absolutely relevant and includes salary information, benefit records, documents reflecting the dates of Jones's employment with his new employer, and his employment application.  This Court has already found that such records are discoverable by a defendant employer in an employment discrimination case.[32] |
|  | • Jones further argue that this Request violates the Pretrial Order in this case.  However, the provision of the Initial Scheduling Order that Jones appears to be referencing requires State Farm's counsel to conference with Jones's counsel before serving subpoenas or sending correspondence to his current employer.[33] |

---

[30] *Blummer v. United Space All., LLC*, No. CV H-09-0326, 2009 WL 10714911, at *1-3 (S.D. Tex. Aug. 6, 2009). See also *U.S. E.E.O.C. v. Consolidated Realty, Inc.,* 2007 WL 1452967, *1-2 (D. Nev. 2007) (finding that a defendant is not entitled to information regarding every medical treatment that a plaintiff obtained over a ten (10) year period simply because the plaintiff's complaint alleged she suffered from emotional distress); and *Broderick v. Shad,* 117 F.R.D. 306, 309 (D.D.C. 1987) (denying defendant's motion to compel plaintiff's medical records over an eleven (11) year period where the plaintiff provided an affidavit stating that she had not received medical treatment as a result of the conditions alleged in her complaint).

[31] *Heller,* 303 F.R.D. at 483-84.

[32] *Gondola v. USMD PPM, LLC,* 223 F. Supp. 3d 575, 583 (N.D. Tex. 2016).

[33] Initial Scheduling Order (Sept. 24, 2019) [ECF No. 14].

| | |
|---|---|
| | State Farm has not sent correspondence or a subpoena to Jones's current employer.  Rather, the Authorization for Release of Personnel and Payroll Records lays out the materials that State Farm wishes to obtain.  Sending that Authorization to Jones and his counsel first is exactly the step that the Order contemplates.  Jones simply chose not to conference with State Farm on the scope of the information sought in the Authorization.  It is Jones, not State Farm, who has not complied with the conference requirement contemplated in the Initial Scheduling Order. |
| **Plaintiff's Position** | • The authorization submitted by Defendant does not contain a time temporal limitation and seeks Plaintiff's employment records both before and after his employment with State Farm, (although it appears that State Farm is now limiting that request to Mr. Jones' post-State Farm employer).<br><br>• This authorization is not limited to payroll records or W-2's, but also seeks "applications for employment, notes from interviews, pre-employment screening tests, employment related physicals, reference checks, hiring records, personnel information forms, job descriptions, employees handbook and/or policies and procedures, drug test results, safety instructions, reports relating to on-the-job injuries, medical records, workers compensation records, disciplinary records, absenteeism records, termination records, attendance records, performance evaluations, salary reviews, wage information, W-2's, W-4's, correspondence, DOT qualification file documents, and any other document in your possession, custody and control pertaining to BOBBY JONES."[34]<br><br>• Since he resigned from his employment at State Farm, Mr. Jones has only had one employer (which is also his current employer), USAA.  Mr. Jones applied for that job while he was employed at State Farm, and began his employment with USAA approximately 17 days after he resigned from State Farm.  There is no good-faith "failure to mitigate" argument in this case at all. Nonetheless, Mr. Jones has already produced USAA paycheck stubs in his possession and his 2018 USAA W-2.  Upon receipt, Plaintiff intends to supplement his response with his 2019 USAA W-2.  Mr. Jones has not provided his USAA benefit information because he is not seeking lost benefit damages as |

---

[34] See *Defendant's First Request for Production to Plaintiff*, "*Authorization for Release of Personnel and Payroll Records*".

part of his failure-to-hire complaint, as his benefits at USAA are comparable to State Farm.

- Given the facts set forth above, while Mr. Jones agrees that State Farm is entitled to his USAA pay records, W-2's and employment dates, Mr. Jones disagrees that (1) Defendant is entitled to an authorization allowing Defendant to subpoena this information from his current employer when he has already provided it; and (2) Defendant is entitled to information other than Mr. Jones' compensation/dates of employment.

- In support of the argument that it is entitled to Mr. Jones' benefit records and employment application, State Farm cites to *Gondola*. State Farm, however, does not provide any other argument as to why this information is relevant in this particular case. This is especially true given that Plaintiff is representing that he is not seeking lost benefit damages against State Farm. Further, unlike *Gondola*, this is a failure-to-hire case and unlike the plaintiffs in *Gondola*, it is undisputed that Mr. Jones (1) resigned from his position at State Farm; and (2) began employment with his current employer approximately 17 days after his resignation.[35] Therefore, what Mr. Jones listed as his availability and the reason he provided for leaving State Farm has no bearing on Defendant's after acquired evidence or mitigation affirmative defense. This is not a wrongful termination case, and there is no good faith basis for a failure to mitigate defense in that circumstance.

- State Farm does not provide any argument or case citations supporting their request for the other information sought by their authorization (i.e. "notes from interviews, pre-employment screening tests, employment related physicals, reference checks, hiring records, personnel information forms, job descriptions, employees handbook and/or policies and procedures, drug test results, safety instructions, reports relating to on-the-job injuries, medical records, workers compensation records, disciplinary records, absenteeism records, termination records, attendance records, performance evaluations, DOT qualification file documents).

- Indeed, even in *Gondola* this Court did not order the plaintiff to produce a blanket authorization. Rather, the Court ordered the plaintiff to provide the following documents or to provide a limited authorization so that the defendant could obtain the following documents: "(1) salary records; (2) benefit records;

---

[35] *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 583 (N.D. Tex. 2016).

(3) documents reflecting Plaintiffs' dates of employment and the circumstance for Plaintiffs' leaving or being terminated from any employment; and (4) any employment applications submitting by Plaintiffs that discuss their reasons for leaving their employment with Defendant or their disabilities or needs or requests for accommodations of that list their demands or requests for salary range."[36]. Plaintiff has already provided (or agreed to provide) this information to Defendant in this case. Significantly, the Court expressly prohibited Defendant from contacting plaintiffs' current employers.[37]

- Employment-discrimination plaintiffs do not open their entire work history up for discovery as a matter of course.[38] The only possible reason for State Farm to seek these records (other than harassment) is an impermissible attempt to attack his character. Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith."); Fed. R. Evid. 402(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person."); Fed. R. Evid. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility...may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.").[39]

---

[36] *Id. at 583.*

[37] *Id.*

[38] *See Woods Fresenius Medical Care Group of North America*, 2008 WL 151836; *Perry v. Best Lock Corp.*, No. 98-c-0936, 1999 WL 33494858, *2 (S.D. Ind. Jan. 21, 1999) (noting that allowing discovery into previous, current, and prospective employers simply for filing a "fairly routine" discrimination case poses serious risk of third-party discovery being used as "instrument for delay and oppression"); *Sanders*, 2009 WL 1392602 at **2-3; *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05-cv-1056, 2006 WL 1627020, *4 (W.D. Fla. Jun. 6, 2006) (quashing overbroad subpoenas for employee's complete personnel files from six prior employers and directing employer to attempt to obtain information from employee before taking intrusive step of subpoenaing non-parties); *Conrod v. Bank of New York*, 1998 WL 430546, *2 (S.D.N.Y. 1998) ("By issuing a subpoena to employee's current employer, defense counsel caused employee to worry about her continued employment relationship, in a manner amounting to harassment. Because of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort.").

[39] *See also Woods v. Fresenius Medical Care Group of North America*, 2008 WL 151836 (S.D. Ind. 2008); *Perry v. Best Lock Corp.*, No. 98-c-0936, 1999 WL 33494858, *2 (S.D. Ind. Jan. 21, 1999); *Reynolds v. York*, 2004 WL 1490040 (N.D. Tex. 2004) (Subpoena issued to former employer amounted to a "fishing expedition" since the Defendant had no basis on which to believe Plaintiff had defrauded prior customers or that Plaintiff suffered from inability to travel in his prior job); *EEOC v. Southern Haulers, LLC*, No. 11-00564 (S.D. Ala. 5/17/12) (the mere possibility that Southern Haulers might discover some evidence that might relate to Plaintiff's qualifications at the time it refused to hire him is insufficient grounds on which to permit broad discovery into pre-incident employers); *Sanders v. Dalcraft LLC*, 2009 U.S. Dist. LEXIS 76583, No. 3-09-CV-0307-P (N.D. Tex. 5/18/09) (opinion by Mag. Judge Kaplan) (employers should not as a "routine matter" undertake discovery into an employee's background or performance to resist claims of discrimination; and the after-acquired defense cannot be inquired into without some prior basis or belief that some evidence will be revealed); *Brazos River Authority v. GE Ionics, Inc.*, 469

- The following cases are also instructive on the discoverability of a plaintiff's employment records in an employment discrimination case:

  - *Sanders v. Dalcraft, LLC*, 2009 WL 1392602, at *2–3 (N.D. Tex. May 18, 2009) (granting a motion for a protective order and quashing subpoenas served on prior employers because "[w]ithout some evidence to suggest that plaintiff was disciplined by her former employers for conduct similar to the reasons proffered by defendant for her termination, defendant is not entitled to these confidential employment records in hopes of uncovering some evidence that may possibly be used against plaintiff at trial").

    o "Nor are these employment records relevant to the issue of mitigation. Because plaintiff continues to work for All State Promotions and Red Bull North America, defendant does not have a viable argument that plaintiff has failed to seek or retain comparable alternate employment. Likewise, the speculative assertion that plaintiff's disciplinary records may reveal that she lost a promotion or advancement opportunities is not enough to justify this discovery." (*Id.*, at *3).

  - *Slipchenko v. Brunel Energy, Inc.,* CV H-11-1465, 2013 WL 12137785, at *2 (S.D. Tex. June 18, 2013) (Granting motion to quash subpoenas that were issued to plaintiff's other employers):

    o *(citing Chamberlain v. Farmington Savings Bank, No. 3–06–CV–01437 (CFD), 2007 WL 2786421 at *3 (D.Conn. Sept. 25, 2007)* (rejecting subpoenas to prior employers "in order to determine whether the plaintiff has been truthful about his performance history and his reasons for leaving his former positions" because "the defendant has not

F.3d 416, 423 (5th Cir. 2006); *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1511 (D.C. Cir. 1995) (evidence of plaintiff's difficulties with interpersonal relationships at prior job should not have been admitted).

|  | alleged any reason to believe that the plaintiff has misrepresented information during the course of this litigation with regard to his previous employment to substantiate such a broad search of his employment records on this ground")); and |
|  | ○ *(citing Boar, Inc. v. County of Nye*, 499 Fed.Appx. 713, 716 (9th Cir. 2012) (holding that personnel files are not discoverable by a defendant "merely trying to find a basis for discrediting" a party (quotation omitted)); |
|  | • *Woods v. Fresenius Med. Care Grp. of N. Am.*, 2008 WL 151836, at *1 (S.D. Ind. Jan. 16, 2008)(stating that because "the [p]laintiff has not placed her entire employment history at issue, but rather only her employment with the [d]efendant," to obtain discovery from a previous or subsequent employer, "the defendant must demonstrate a specific reason why the information is relevant to the particular claims and defenses in the case at hand"); |
|  | • *Smartix Int'l, L.L.C. v. Garrubbo, Romankow & Capese, P.C.*, 2007 WL 4166035, at *2 (S.D.N.Y. Nov. 20, 2007) (quashing subpoenas to former employers because "personnel records with other companies are not relevant to the claim or defense of any party" (quotation omitted)); |
|  | • *Bahrami v. Maxie Price Chevrolet–Oldsmobile Inc.,* No. 1:11–CV–4483–SCJ–AJB, 2013 WL 3800336, at *4 (N.D.Ga. June 19, 2013) (collecting cases where courts have granted motions to quash subpoenas or for protective orders when parties have cited speculative reasons for seeking employment records); |
|  | • *Reynolds v. York,* No. 3:04–MC–045–P, 2004 WL 1490040, at *1 (N.D.Tex. July 2, 2004) (holding that third-party subpoena served on former employer seeking personnel file and other documents that might impeach plaintiff's credibility "amounts to nothing more than a fishing expedition," particularly since Respondent had no basis on which to believe Claimant had engaged in any misconduct at other |

employers that was similar to that at issue in the case at bar);

- *Liles v. Stuart Weitzman, LLC*, 09-61448-CIV-COHN, 2010 WL 1839229, at \*5 (S.D. Fla. May 6, 2010) ("...the Court will not permit discovery of Plaintiff's prior employment records for the purpose of seeking to find some evidence of wrongful conduct by Plaintiff. Defendant's efforts to obtain the employment records from Plaintiff's former employers on the off-chance that it may find some evidence of wrongdoing is merely a fishing expedition.");

- *EEOC v. Southern Haulers, LLC*, No. 11-00564 (S.D. Ala. 2012) (the mere possibility that Southern Haulers might discover some evidence that might relate to Claimant's qualifications at the time it refused to hire him is insufficient grounds on which to permit broad discovery into pre-incident employers); and

- *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1511 (D.C. Cir. 1995) (holding that because plaintiff's difficulties with interpersonal relationships at her prior job was irrelevant, the district court improperly admitted such evidence)

- *Hansen v. Alamo Mobile X-Ray & EKG Services, Inc.*, SA-14-CA-01070-FB, 2015 WL 12866215, at \*2 (W.D. Tex. Oct. 7, 2015)(rejecting an employer's argument that it was entitled to obtain an employee's job application to see the reason the employee gave for the separation of employment and the qualifications identified)

  o ("...according to Alamo Mobile, is the information Hansen listed as his reason for separation from Alamo Mobile on his job applications to subsequent employers. If he claims that his termination from Alamo Mobile was for reasons other than discrimination, his allegations of discrimination in this case are less likely to be true. Alamo Mobile further states that such a discrepancy would bear upon Hansen's credibility. Additionally, Alamo

| | | Mobile contends the qualifications he identified, or did not identify, on his job applications demonstrate whether he attempted to obtain a position of substantially equivalent employment." The court rejected this argument, concluding that: "these document requests amount to nothing more than a fishing expedition." *Id.* And while "Hansen's pay records is certainly relevant to the issues of damages and mitigation," the employer's "request to obtain his disciplinary records, performance evaluations, and other performance documents is not relevant." *Id.* |
|---|---|---|

### B.   Plaintiff's Supplemental Responses and Objections to Defendant's First Set of Interrogatories to Plaintiff

### INTERROGATORY NO. 3:
Please state the name, address and telephone number of all doctors, psychologists, psychiatrists, counselors, therapists, and any and all medical care professionals that you have seen within the last 10 years.

| **Defendant's Position** | ● Jones first objects to this Interrogatory on the grounds that it is overly broad in temporal scope and is not limited to medical treatment that Jones alleges was caused by State Farm's alleged discrimination against him. This argument is not persuasive, as courts considering the discoverability of the identities of treatment providers "have generally found that the identities of health providers, the dates of treatment and the nature of the treatment are relevant to claims for emotional distress damage."[40] |
|---|---|
| **Plaintiff's Position** | ● Mr. Jones respectfully directs the Court to his position stated in response to Request for Production No. 47. |

### INTERROGATORY NO. 5:
Please state your gross and net income for each of the last five years, and identify the source(s) of same.

---

[40] *Merrill*, 227 F.R.D at 471.

| Defendant's Position | • The only information Jones appears to have omitted is his net income for each of the last five years. Because he was able to provide gross income information, he should also be able to provide net income information. |
|---|---|
| Plaintiff's Position | • Plaintiff has already agreed to provide the following information: (1) income earned from subsequent employment (including self-employment); (2) information reflecting any withdrawals from his 401(k) or other retirement accounts from the date he resigned from Defendant to present; and (3) rental income received from the date he resigned from Defendant to present. Plaintiff has agreed to provide this in spite of the fact that it's not relevant, because in this case Plaintiff's calculable damages are limited to the difference in income between: (a) the jobs he applied for but did not receive, and (b) the jobs he has held instead. It is simply irrelevant whether Plaintiff may have received income from some other source - it wouldn't change the fact that he has experienced a decrease in wages. For example, Plaintiff's rental properties predated his voluntary departure from State Farm, and continue to this day. Their existence does not affect his damages calculation in this case. He has still suffered a decrease in salary. Nonetheless, Plaintiff has provided the specific sources of additional income that Defendant has pointed to in caselaw, in an attempt to resolve this dispute. But Defendant insists on discovering more, unnamed, sources of income. Defendant doesn't define or specify what other sources of "income" it wants to know about, leaving Plaintiff in the dark about what else Defendant seeks.<br><br>• The only other dispute over this request is the insistence that Plaintiff calculate his "net" income in addition to providing his gross income figures and records. These records (W2's) already set forth his gross wages, and the amounts withheld as taxes. Defendant did not define "net income" anywhere in its request, so Plaintiff can only assume that it seeks pre-tax and post-tax amounts. That is information which Plaintiff has already provided on his W2 forms. |

**INTERROGATORY NO. 10:**

Please describe in detail each communication that you have had with anyone other than your attorney relating to the subject matter of this Lawsuit (*e.g.*, in person; over the telephone; by e-mail/text/instant messages; by another form of electronic communication; etc.). Your answer shall include, but not be limited to, the following with regard to each such communication:

(a)   Date;
(b)   Persons involved;
(c)   Method of communication; and
(d)   Subject matter.

| Defendant's Position | ● Jones objects to this Interrogatory on the grounds of work product and the husband-wife privilege. Please see State Farm's response herein regarding these privilege assertions in its position on RFP No. 10. |
|---|---|
| Plaintiff's Position | ● **Regarding the work product issue, s**ee Plaintiff's response to RFP No. 10.<br><br>● Regarding the husband wife privilege, Plaintiff has had multiple discussions with his wife about this case and the decision of whether to file suit.  Those communications were made privately between them and they did not intend to disclose them to any other person.  This is a fundamental, blanket privilege in Texas and State Farm has pointed to no authority or argument as to why it should get to override this privilege.  *See* TRE 504(a)(2) ("A person has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made to the person's spouse while they were married.") |

## C.      Agreed Protective Order

<u>Issue</u>:

State Farm insists on securing a protective order in this case, regardless of whether the parties can agree to one or State Farm must file an opposed motion requesting the Court to enter one.  Jones is not opposed to entering an agreed protective order.  But, the parties cannot agree on appropriate language.  They have exchanged numerous e-mail messages, and forwarded several drafts of agreed protective orders.

| Defendant's Position | ● State Farm first proposed, and still believes it appropriate, that the parties use the standard form Protective Order for the U.S. District Court for the Northern District of Texas.<br><br>● Jones is not willing to execute an agreed protective order that patterns the standard form Protective Order for the U.S. District Court for the Northern District of Texas.  Jones will not agree to the standard form's inclusion of a provision requiring the parties to destroy or return all materials and documents containing Confidential Information or Confidential Attorneys Eyes Only Information.  Jones's counsel has taken the position |

that it must be able to maintain possession of State Farm's confidential information for a period of several years following the conclusion of this lawsuit. State Farm, which remains concerned about the disclosure of its Confidential Information, is quite uncomfortable with the idea that the lawyers representing a party that sued it would want to retain its confidential information produced in discovery of a closed case. There is no legal or factual justification for Jones to keep State Farm's confidential documentation after this lawsuit ends.

- Additionally, Jones is unwilling to agree to the standard form's inclusion of a provision permitting particularly sensitive information to be designated Confidential for Attorneys Eyes Only. State Farm cannot provide Jones access to particularly sensitive information, and would prefer to limit such information to his attorneys only. While he is willing to allow State Farm the opportunity to designate Confidential for Attorneys Eyes Only for the Court-ordered production of home addresses and telephone numbers of several State Farm executives, Jones believes that State Farm should not be able to make this designation for anything else, even though the standard protective order form for this District as well as just about any other protective order form contemplates the possibility that parties would exchange documents worthy of this designation.

- Contrary to Jones' assertions below, State Farm will identify the personal addresses and phone numbers of the witnesses, as ordered by the Court. But, due to State Farm's significant and valid security concerns (which have been articulated to Jones' counsel), it would insist on the issuance of a protective order beforehand. State Farm's counsel was, up to this point, under the impression that Jones' counsel appreciated State Farm's concerns regarding safety and confidentiality, and had no problem receiving this information after the Court ruled on this protective order issue. Therefore, State Farm's counsel is surprised that Jones' counsel is now criticizing State Farm's insistence that it could only provide such sensitive information with a protective order in place. Candidly, this is the first time that State Farm's counsel has ever met resistance like this to the language of a protective order, especially when the District provides a more than satisfactory form on its website with which State Farm would be more than happy.

| | |
|---|---|
| **Plaintiff's Position** | • The "standard" form State Farm references is a standard protective order for *patent* cases - an area of practice that frequently involves true, "top secret" information that an |

adverse party could use to harm a competitor. It therefore makes sense to have certain high-level restrictions in a case like that. This is not that type of case. The records that State Farm contends to be so secret are personnel records. There is simply no reason for these types of records to be subject to the same type of high-level protection and restriction that takes place in patent litigation. State Farm's insistence on top-secret level protection reflects nothing more than its own desire to keep everything about this case quiet and secret. That's not sufficient to carry its burden when insisting on protection:

- o *Humphreys v. Caldwell*, 881 S.W.2d 940, 945 -946 (Tex. App.-Corpus Christi,1994) (With regard to Request for Production No. 19, asking State Farm to produce the complete personnel files of Humphreys and Holiner, State Farm complains that the request invades the employees' privacy rights and divulges trade secrets. Specifically, Jones stated in his affidavit that it is State Farm's policy "to protect the privacy rights of present and former employees," and that disclosure of such information is therefore limited.....Although information contained in employment records might, under some circumstances, be included within the protected zone of privacy, relator must show the particulars of the expectation of privacy beyond merely conclusory allegations that the employer considers such information to be private and keeps it confidential. In the present case, Jones' conclusory allegation that State Farm considers its personnel files to be private does not impose any duty upon the trial court to recognize a privacy interest protecting that information from discovery.").

- o *In re Crestcare Nursing and Rehabilitation Center*, 222 S.W.3d 68, 74 (Tex.App.-Tyler,2006) (A party asserting that privacy rights protect personnel files from disclosure must present evidence showing "a particular, articulated and demonstrable injury.") (quoting *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex.1987)).

- o *In re DuPont*, 136 S.W.3d at 224 (affidavit merely presenting global allegations that documents come within the asserted privilege has no probative value).

- Nonetheless, Mr. Jones has agreed to a basic protective order in order to keep the ball moving in this case. He has already agreed

to basic confidentiality provisions Mr. Jones is disputing only two aspects of State Farm's proposal:

- (1) he requests that an exception be included in the protective order so that his attorneys can maintain a full and complete copy of the case file. Mr. Jones' attorneys believe that they have an obligation to maintain client files for a reasonable amount of time post-litigation. While Texas does not have a specific timing rule on this, many other states do, and so does the ABA. Mr. Jones' attorneys view it as the responsible/ethical practice. While State Farm's attorneys have offered to maintain a complete copy of the case file post-litigation, this is impractical as numerous problems could arise, such as who would be responsible if something were to happen to the records and they needed to be recalled for some reason. It is the right thing to do in terms of preserving client records, and in terms of preserving counsel's ability to defend itself from any future claims that may arise related to representation. If Plaintiff's counsel retains "confidential" documents post-litigation (which it has done in multiple other cases as a matter of course), Plaintiff's counsel must, of course, comply with all ethical rules and the protective order's confidentiality terms, and fully intends to do so. There is simply no reason for State Farm to have a problem with this, unless it intends to accuse Plaintiff's counsel of being unethical or irresponsible.

- (2) There is no legitimate need for Attorneys Eyes Only level protection in this case. These clauses are inappropriate in employment discrimination cases. While such a clause may be appropriate in a patent case involving competing business entities, in employment cases, the discovery documents exchanged do not contain the same degree of proprietary information. Counsel needs to be able to discuss and share every document with our client to effectively prosecute the case. By way of example, if State Farm designated the personnel information of other individuals that applied and/or were hired for the positions sought by Plaintiff as Attorneys Eyes only, counsel would not be able to share this information with Mr. Jones to obtain his feedback as to why he is more qualified than the individual selected, why the reasons provided by State Farm are pretextual, why his experience is the same or different than another candidate, etc. In other words, these restrictions prevent Mr. Jones from preparing for, and participating in his case.

- State Farm has identified <u>one</u> area that it contends warrants this high level of restriction -- the personal addresses and phone numbers of witnesses (which are required to be disclosed under

|  | Rule 26 and by this Court's Pretrial Order, but which State Farm has still refused to provide citing confidentiality concerns). Although Plaintiff disagrees with State Farm on this point, he has agreed to provide State Farm with Attorneys' Eyes only level protection for this category.  State Farm has not identified any other category of information or documents likely to be involved in this case that it thinks would warrant Attorneys Eyes Only protection. This dispute is entirely hypothetical. |
|--|--|

Respectfully submitted,

*Counsel for Plaintiff Bobby Jones:*

*Ashley Tremain*

Ashley Tremain
State Bar No. 24066209
Ashley@tremainartaza.com

Carmen Artaza
State Bar No. 24055114
Carmen@tremainartaza.com

TREMAIN ARTAZA, PLLC
13140 Coit Road, Suite 104
Dallas, Texas 75240
469.573.0229
(f) 214.254.4941

&

*Counsel for Defendant State Farm Mutual Automobile Insurance Company:*

*Monte K. Hurst*

Monte K. Hurst
State Bar No. 00796802
Monte.Hurst@hallettperrin.com

Elizabeth A. Fitch
State Bar No. 24075777
EFitch@hallettperrin.com

HALLETT & PERRIN, P.C.
1455 Ross Avenue, Suite 2400
Dallas, Texas 75202
214.953.0053
(f) 214.922.4142