IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **Bobby Jones,** | § |
| *Plaintiff,* | § |
| | § |
| v. | § |
| | § Civil Action No. 3:19-cv-1650-L |
| | § |
| **State Farm Mutual Automobile Insurance Company** (*d/b/a* "State Farm") | § |
| | § |
| *Defendant.* | § |

**PLAINTIFF'S SUPPLEMENTAL RESPONSES & OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**

To: Defendant, State Farm Mutual Automobile Insurance Company, by and through its' attorneys of record Monte Hurst and Elizabeth Fitch of Hallett & Perrin, P.C., located at 1445 Ross Avenue, Ste. 2400, Dallas, Texas 75202.

Now Comes Plaintiff Bobby Jones, and files these Supplemental Answers and Objections to the First Set of Interrogatories from Defendant, pursuant to the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 1:**

Please state the following for each person or company by whom you have been employed within the last 10 years:

    (a)    Name of person/company;
    (b)    Address of person/company;
    (c)    Telephone number of person/company;
    (d)    Position(s) held;
    (e)    Rate(s) of pay;
    (f)    Supervisor(s);
    (g)    Dates of employment; and
    (h)    Reason for leaving.

**ANSWER:** From 2009 to October 2018, Plaintiff was employed by Defendant. From approximately 2009 to October 2018, Plaintiff held the following roles at State Farm:

- Learning Manager
    - Plaintiff held this position for approximately one month.
    - Plaintiff believes his supervisor was Sara Murphy.
    - Plaintiff believes his salary was approximately $139,000.
    - Reason for Leaving: Plaintiff resigned from his employment at State Farm due to the continued discrimination he experienced in connection with various promotions (both in terms of actual job positions and LDA assignments) he sought or applied for that were given to other candidates outside of his protected class.

- Weather & Catastrophe Claim Services (WCCS) Section Manager
    - Irving, Texas
    - Plaintiff held this position from approximately 2014 to 2018.
    - Plaintiff reported to Misty Yeatts from 2014 to 2015, and Rick Moore from 2015 to 2018.
    - Salary: Plaintiff does not recall his exact salary. Please see his W-2's from 2014 to 2018.
    - Reason for leaving: Lateral Transfer to Learning Manager position

- Centralized Catastrophe Services Section Manager.
    - Irving, Texas
    - Plaintiff held this position from approximately 2012 to 2014.
    - Plaintiff reported to Misty Yeatts.
    - Salary: Plaintiff does not recall his exact salary during this time period.
    - Reason for Leaving: Plaintiff's position was given a new name as part of the reorganization.

- Catastrophe Service Team Manager for Field Operation
    - Plaintiff was domiciled in Oklahoma City, Oklahoma, but traveled throughout the

2

    United States to work in storm impacted areas.
- Plaintiff held this position from approximately 2008 to 2012.
- Salary: Plaintiff does not require his exact salary during this time period.
- Reason for Leaving: Promoted to Centralized Catastrophe Service Sections Manager.

On October 28, 2018, Plaintiff began working for United Services Automobile Asn. ("USAA") as a Director, Claim Operations. Plaintiff initially reported Greg Fleming. As of September 1, 2019, Plaintiff reports to Marcel Blythe. Plaintiff's annual salary is $136,000.00. Plaintiff has not left this job.

**INTERROGATORY NO. 2:**
Please provide the following for each source of money or financial support you have received over the last five years:

  (a) Date(s) you received the money/financial support;
  (b) Amount of money/financial support;
  (c) Person or entity that paid the money; and
  (d) Reason the money was paid to you.

**OBJECTION:**
**Plaintiff objects to the portion of this request that seeks information on money or financial support from any source because overly broad as to scope. Plaintiff agrees to provide the following information: (1) income earned from subsequent employment (including self-employment); (2) information reflecting any withdrawals from his 401(k) or other retirement accounts from the date he resigned from Defendant to present; and (3) rental income received from the date he resigned from Defendant to present.**

**ANSWER:**

Under the limitation set forth above, Plaintiff states:

- From 1/1/2019 to 11/09/2019, Plaintiff earned $152,222.22 (gross) from his employment at USAA.
- From October 28, 2018 to December 31, 2018, Plaintiff earned approximately $45,295.01 (gross) from his employment at USAA.
- In 2018, Plaintiff earned approximately $63,119 (gross) from his employment with Defendant.
- In 2017, Plaintiff earned approximately $149,815.82 (gross) from his employment with Defendant.
- In 2016, Plaintiff earned approximately $142,724.06 (gross) from his employment with Defendant.
- In 2015, Plaintiff earned approximately $161,819.52 (gross) from his employment with Defendant.
- In 2014, Plaintiff earned approximately $142,062.76 (gross) from his employment with Defendant.
- Plaintiff has not received any unemployment, social security, short-term disability, or long-term disability benefits from 2014 to present.

- As a result of Defendant's failure to hire him, Plaintiff did not make any withdrawals from his 401(k) or other retirement accounts. Likewise, Plaintiff is not seeking to recover lost benefit damages from Defendant.
- In 2018, Plaintiff experienced a loss of approximately $29,000 with respect to his rental properties.

**INTERROGATORY NO. 3:**

Please state the name, address and telephone number of all doctors, psychologists, psychiatrists, counselors, therapists, and any and all medical care professionals that you have seen within the last 10 years.

**OBJECTION: Plaintiff objects to this interrogatory as it is overly broad in temporal scope in that it seeks information over a ten (10) year period and is not limited to medical treatment that Plaintiff alleges was caused and/or connected with Defendant's failure to promote him. Instead, this Interrogatory seeks information on any medical treatment obtained by Plaintiff in the past ten (10) years, including medical treatment for purely physical conditions.** *See* **Burrell v. Crown Central,** *177 F.R.D. 376 (E.D. Tex. 1997);* **U.S. E.E.O.C. v. Consolidated Realty, Inc.,** *2007 WL 1452967, \*1-2 (D. Nev. 2007);* **Broderick v. Shad,** *117 F.R.D. 306, 309 (D.D.C. 1987);* **Dochniak v. Dominium Management Services***, 2006 WL 3156539 at \*1 (D.Minn., July 26, 2006).* **Plaintiff will provide the name and contact information of any doctor, psychologist, psychiatrist, counselor or therapist that Plaintiff has seen as a result of Defendant's failure to promote him or consider him for a LAD position and/or as a result of this lawsuit.**

**ANSWER:** Under the limitation set forth above, Plaintiff did not seek treatment from any doctors, psychologist, psychiatrists, counselors, therapists or other medical professional as a result of Defendant's failure to promote him and/or consider his for a LAD position and/or as a result of this lawsuit, and he does not intend to rely on any medical records or testimony to support his claims. Further, Plaintiff has not sought mental health treatment within the last 10 years.

**INTERROGATORY NO. 4:**

Other than this Lawsuit, please list the following for each lawsuit in which you are/were a party:

      (a)     Style of cause;
      (b)     Cause number;
      (c)     Court; and
      (d)     County and state in which the lawsuit was filed.

**RESPONSE:** *Steve Wetter, individually and Linda Wetter, individually, and as independent executor of the Estate of Gary Wetter v. Bobby Jones, individually, and Ayo D. Jordan-Jones, individually v. Joel J. Hunt and Risa D. Hunt,* Cause No. DC-18-02268, 44th Judicial District, Dallas County, Texas.

4

**INTERROGATORY NO. 5:**

Please state your gross and net income for each of the last five years, and identify the source(s) of same.

**OBJECTION: Plaintiff objects to this interrogatory as the time period is overly broad. Plaintiff objects to the portion of this request that seeks information on money or financial support from any source because overly broad as to scope. Plaintiff agrees to provide the following information: (1) income earned from subsequent employment (including self-employment); (2) information reflecting any withdrawals from his 401(k) or other retirement accounts from the date he resigned from Defendant to present; and (3) rental income received from the date he resigned from Defendant to present.**

**ANSWER:**

- From 1/1/2019 to 11/09/2019, Plaintiff earned $152,222.22 (gross) from his employment at USAA.
- From October 28, 2018 to December 31, 2018, Plaintiff earned approximately $45,295.01 (gross) from his employment at USAA.
- In 2018, Plaintiff earned approximately $63,119 (gross) from his employment with Defendant.
- In 2017, Plaintiff earned approximately $149,815.82 (gross) from his employment with Defendant.
- In 2016, Plaintiff earned approximately $142,724.06 (gross) from his employment with Defendant.
- In 2015, Plaintiff earned approximately $161,819.52 (gross) from his employment with Defendant.
- In 2014, Plaintiff earned approximately $142,062.76 (gross) from his employment with Defendant.
- Plaintiff has not received any unemployment, social security, short-term disability, or long-term disability benefits from 2014 to present.
- As a result of Defendant's failure to hire him, Plaintiff did not make any withdrawals from his 401(k) or other retirement accounts. Likewise, Plaintiff is not seeking to recover lost benefit damages from Defendant.
- Plaintiff will supplement this response with rental income earned following his resignation from State Farm to present.
- In 2018, Plaintiff experienced a loss of approximately $29,000 with respect to his rental properties.

**INTERROGATORY NO. 6:**

Please list the following for each location where you have resided within the last 10 years:

   (a)   Address; and
   (b)   Dates of residence.

**OBJECTION: Plaintiff objects to this interrogatory as it is overly broad in that it seeks information on Plaintiff's residences over a ten-year period. Moreover, with the exception of Plaintiff's current address, this information is not relevant or reasonably calculated to lead to the discovery of admissible evidence.**

5

**ANSWER:** Under the limitation set forth above, Plaintiff's current address is 11 S Central Ave, Apt. 2000 Phoenix, AZ 85004.

**INTERROGATORY NO. 7:**

Please identify each internet-based social networking site that you have used during the past five years (*e.g.*, BuzzFeed; eharmony; Facebook; Flickr; Foursquare; Instagram; LinkedIn; Match; Meetup; Pinterest; Snapchat; Tender; Tumblr; Twitter; YouTube; etc.). For each such site identified, please provide the name and address of the account holder, your user name or avatar, the URL where the account was/is available, and the dates during which you used the account.

**OBJECTION:** **Plaintiff objects to this interrogatory as it is intended to harass Plaintiff and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence (whether Plaintiff is a member of social networking sites such as eharmony, Match, Meetup or Pinterest, has absolutely no relevance to Plaintiff's claims that Defendant failed to promote him on basis of his age, race or gender). The temporal scope of this interrogatory (5 years) is overly broad. To the extent this interrogatory asks Plaintiff to identify every "date" that he used a social networking account over the past five years, this interrogatory is unduly burdensome. Plaintiff will identify any internet-based social networking site that he has used to discuss his discrimination complaints against Defendant, his claims that Defendant failed to promote him on the basis of his age, gender or race or the separation of his employment with Defendant.**

**ANSWER:** Under the limitation set forth above, none.

**INTERROGATORY NO. 8:**

Please list the following for each criminal arrest and/or criminal charge against you:

      (a)    Style of case;
      (b)    Cause number;
      (c)    Court of jurisdiction;
      (d)    Description of criminal charges;
      (e)    Date of arrest; and
      (f)    Disposition.

**ANSWER:** None.

**INTERROGATORY NO. 9:**

Please describe in detail and itemize all damages you are seeking to recover in this Lawsuit.

**ANSWER:** Plaintiff will seek the damages outlined in his Original Complaint. The damages outlined in Plaintiff's Original Complaint include:

**Lost Wages:**
Plaintiff will seek to recover his past lost wages (e.g., the difference between what he currently earns, and what he would have earned had he been selected for the identified promotional opportunities at State Farm) from the date that the position was filled up to the date of trial.

6

Plaintiff will supplement this disclosure with an actual damage calculation once it obtains the compensation information from Defendant for the various promotions that Plaintiff sought.

**Front Pay:**
Plaintiff also seeks to recover the equitable remedy of front pay: the difference between what he is currently expected to earn through retirement given his current career trajectory, and what he would have earned had he been selected for the identified promotional opportunities at State Farm. Plaintiff will supplement as to the number of years that he will seek front pay damages. Plaintiff will supplement this disclosure with an actual damage calculation once it obtains the compensation information from Defendant for the various promotions that Plaintiff sought.

**Liquidated Damages:**
Plaintiff will request liquidated damages in conjunction with his ADEA claim. Plaintiff will calculate his liquidated damages by doubling his lost wage damages. Plaintiff will supplement this disclosure with an actual damage calculation once it obtains the compensation information from Defendant for the various promotions that Plaintiff sought.

**Compensatory/Punitive Damages:** For Plaintiff's Title VII, 1981 and ADEA claims, Plaintiff will also seek to recover compensatory and punitive damages up to the statutory limit (which will be dependent upon Defendant's total number of employees). Plaintiff will supplement this Interrogatory with the amount of compensatory and punitive damages sought with respect to his 1981 claims.

**Attorneys' Fees:**
Plaintiff will also seek to recover attorney's fees at the lodestar rate of $450.00 per hour. By the time of trial, this category is expected to exceed $150,000.

**Costs:**
Plaintiff's litigation costs incurred to date are approximately $540.00. It is estimated that his costs will total roughly $10,000.00 by the time of trial. This estimate is based on the total amount of costs incurred by Plaintiff's counsel in similar cases through the date of trial.

**Prejudgment Interest:**
Prejudgment interest on Plaintiff's back pay is calculated as 5% simple annual interest, beginning on July 10, 2019 (i.e., the earlier of the date he filed suit or 180 days after defendant received written demand for payment).

Plaintiff will also request post-judgment interest and injunctive relief to prevent further legal violations.

**INTERROGATORY NO. 10:**
Please describe in detail each communication that you have had with anyone other than your attorney relating to the subject matter of this Lawsuit (*e.g.*, in person; over the telephone; by e-mail/text/instant messages; by another form of electronic communication; etc.). Your answer shall include, but not be limited to, the following with regard to each such communication:

    (a)    Date;
    (b)    Persons involved;
    (c)    Method of communication; and

7

      (d)      Subject matter.

**OBJECTION**:  **Plaintiff objects to this request because it seeks work product privileged information. Witness communications that took place after Plaintiff's termination and/or in anticipation of litigation, are privileged as work product and will not be disclosed.** *Elec. Data Sys. Corp. v. Steingraber, 4:02 CV 225, 2003 WL 21653405, at \*1 (E.D. Tex. July 9, 2003); Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 513 (D. Minn. 1997) (emphasis added). See also United States v. Nobles, 422 U.S. 225, 239 (1975).*

**Plaintiff also objects to this interrogatory to the extent it seeks information protected by the husband-wife privilege.**

**Based on these objections, Plaintiff is withholding information on text message communications that he had with two former co-workers and verbal communications that he has had with his wife.**

**ANSWER**:  Plaintiff has discussed the fact that he filed a charge of discrimination and filed a lawsuit against Defendant with his mother and brother.  Plaintiff doesn't recall the exact time of each conversation, but each conversation was verbal and consisted of general comments that Plaintiff has filed a lawsuit against Defendant.

**INTERROGATORY NO. 11:**
Please describe by category and location all documents, data compilations, and tangible things in your possession, custody, or control that are relevant to disputed facts alleged with particularity in the pleadings.

**ANSWER:**  Plaintiff refers Defendant to the documents produced in conjunction with *Plaintiff's Initial Disclosures* and/or *Plaintiff's Responses to Defendant's First Request for Production.*

**INTERROGATORY NO. 12:**
Please list all steps which have been taken to identify and preserve any electronically-stored information relating to your allegations in this Lawsuit (*e.g.*, documents stored on any type of computer, e-mail messages; text messages; instant messages; magnetic storage; solid state device; remote/cloud storage—including all social media and other information stored on the internet or accessible from websites, etc.).

**ANSWER:**  Plaintiff states that he has taken care not to remove or destroy any electronically-stored information that discusses his claims that Defendant failed to promote him based on his age, gender, or race or related to the separation of his employment with Defendant from the date Plaintiff filed his EEOC charge to present.

**INTERROGATORY NO. 13:**
Please describe in detail all efforts you made to obtain gainful employment after your separation from State Farm. Your answer shall include, but not be limited to, the following with regard to each such effort:

      (a)      Person/company at which you sought employment;
      (b)      Date(s) you sought to obtain employment;

(c) Person(s) with whom you communicated in your effort;
(d) Descriptions of communications pertaining to your effort; and
(e) Descriptions of all documents pertaining to your effort.

**OBJECTION:** **Plaintiff objects to subsection (c) – (e) as it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. (By way of example, the identity of the individual(s) Plaintiff spoke with when searching for employment is not relevant to Defendant's failure to mitigate affirmative defense.) Further, the phrases "descriptions of communications pertaining to your efforts" and "descriptions of all documents pertaining to your effort" are vague and ambiguous. To the extent Plaintiff recalls, Plaintiff will provide information on the identity and date of each employer that he sought employment with after his employment with Defendant ended. If Plaintiff was offered a job by any of these entities, Plaintiff will provide the date of the job offer, and will indicate whether he accepted or rejected the job offer. If a job offer was extended, and Plaintiff received a written job offer, Plaintiff will indicate whether he has a copy of the job offer in his possession.**

**ANSWER:** Since his employment ended with Defendant, Plaintiff has been employed at USAA, Inc. Plaintiff sought employment with USAA while he was employed at State Farm, not after. A copy of Plaintiff's job offer from USAA will be produced.

**INTERROGATORY NO. 14:**
Please identify each job search engine/website at which you have, since your separation from State Farm (a) created an account, (b) searched for employment/work, or (c) posted a résumé or otherwise submitted information about yourself.

**ANSWER:** Since his employment ended with Defendant, Plaintiff has been employed at USAA, Inc. Therefore, since his employment ended by Defendant, Plaintiff has not used any job search engine/website to search for employment.

**INTERROGATORY NO. 15:**
Please state the date on which you first hired an attorney to represent you in this matter, and identify each attorney who has represented you in this matter.

**ANSWER:** Plaintiff retained the law firm of Tremain Artaza, PLLC on approximately June 15, 2019. However, on approximately April 25, 2019, Plaintiff began seeking attorney representation and communicated with multiple attorneys regarding his claims after that date.

**INTERROGATORY NO. 16:**
Please state with particularity each fact that you would contend support(s) your allegation that you repeatedly requested a LDA – from 2015 until the end of you employment in 2018, as alleged in the Petition. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

**ANSWER:** Plaintiff states that he does not recall the exact date of each instance where he made a LDA request. Likewise, he does not recall his exact location each time he made a LDA request.

However, Plaintiff states that made a LDA request during his 2017 and 2018 mid-year and end-of-year evaluation with Mr. Rick Moore. Plaintiff also requested a LDA in during his personal development conversations and in his self-assessment ("Ready with Development Review"), which was created prior to each performance evaluation.

Plaintiff discussed his LDA assignment request with numerous State Farm employees, including, but not limited to: Wendy Mazza, Rick Moore and Shayma Terry and Kevin McKay. Again, Plaintiff does not recall the exact date or location of these conversations. However, he generally discussed his LDA assignment request with Wendy Mazza, Shayma Terry and Rick Moore during his monthly progress meetings/personal development conversations.

Likewise, Plaintiff had several conversations with Kevin McKay regarding his LDA assignment request. Plaintiff believes one of these conversations occurred in late March or early April of 2018.

Plaintiff refers Defendant to Plaintiff's bates-numbered documents Nos. 13-21 for additional responsive information.

**INTERROGATORY NO. 17:**
Please state with particularity each fact that you would contend support(s) your allegation that despite your undisputed qualifications, you was never given a LDA, as alleged in the Petition. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

**ANSWER:** With the limitation set forth above, Plaintiff states that he was never given an official reason as to why he was not being selected for a LDA and/or an official notification that he had not been selected for a LDA. On the contrary, Plaintiff's superiors, Rick Moore and Wendy Mazza encouraged him to prepare for a LDA. On approximately October 8, 2018, Plaintiff learned that the LDA had been given to a younger, Hispanic female, Perla Pederson.

Plaintiff refers Defendant to Plaintiff's bates-numbered documents Nos. 13-21 for additional responsive information.

**INTERROGATORY NO. 18:**
Please state with particularity each fact that you would contend support(s) your allegation that you learned that each of the positions you applied for was given to an individual who was outside of your protected class (i.e. individuals who were substantially younger than you, who were not black, and/or who were not male), as alleged in the Petition. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

**ANSWER:** Based on the limitation set forth above, Plaintiff state as follows:

| Individual | Gender | Race/National Origin |
| --- | --- | --- |

10

| Perla Pedersen | Female | Hispanic |
| --- | --- | --- |
| Melissa Grimmett | Female | Caucasian |
| Mary Kaye Bennett | Female | |
| Michael Carter | Male | African-American |
| Melissa Christie Morales | Female | |
| Andre Cooke | Male | African-American |
| Angela Null | Female | |
| Diane Roberson | Female | |
| Peter Strahlendorf | Male | |
| Lindsey Webb | Female | |
| Rob Tierney | Male | |
| Chelsea Groess | Female | |
| Nicole Manduca | Female | |

**INTERROGATORY NO. 19:**

Please state with particularity each fact that you would contend support(s) your allegation that you reported your concerns of discrimination to State Farm, but it conducted only a perfunctory investigation, and did nothing to address or correct the problems you identified, as alleged in the Petition. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

**ANSWER:** Based on the limitation set forth above, Plaintiff states that on approximately October 9, 2018, he contacted State Farm Compliance & Ethics Hotline and complained he had been discriminated against with regards to promotional opportunities and advancement within State Farm. On October 17, 2018, Marlene Anderson, HR Investigator, interviewed Plaintiff about his complaint. On December 6, 2108, Ms. Anderson issued an Executive Summary. Plaintiff was never given the findings/results of the investigation or an opportunity to provide rebuttal evidence to Defendant's claim that the individuals selected were more qualified than Plaintiff.

Plaintiff refers Defendant to Plaintiff's bates-numbered documents Nos. 13-21 for additional responsive information.

**INTERROGATORY NO. 20:**

Please state with particularity each fact that you would contend support(s) your allegation that defendant's purported reasons for refusing to hire you for these positions (e.g., that the other candidates were better qualified or a 'better fit') are false and unworthy of credence, as alleged in the Petition. Your answer shall include, but be not limited to, the date, time and exact location of any such occurrence, each individual present during such an occurrence, and any conversation before, during or after any such occurrence.

**ANSWER:** The basis for Plaintiff's claim that Defendant's reason are a pretext for discrimination include, but are not limited to:

- Plaintiff's qualifications/experience in comparison to the qualifications/experience of the individual(s) ultimately hired; and
- Plaintiff's supervisors act of beginning to hire for Plaintiff's position because it was

11

presumed that Plaintiff would receive one of the positions that he applied for given his experience/qualifications.

Plaintiff refers Defendant to all documents produced and all depositions taken in this matter for additional, responsive information.

*Respectfully Submitted,*

**Tremain Artaza, PLLC**

By: */s/ Carmen Artaza*
Carmen Artaza
State Bar No. 24055114
Ashley E. Tremain
State Bar No. 24066209

13140 Coit Road, Ste. 104
Dallas, Texas 75240
Telephone: 469-573-0089
Facsimile: 214-254-4941
Carmen@tremainartaza.com
Ashley@tremainartaza.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was sent via e-mail on this date January 17, 2020 to the following individuals:

Monte Hurst
Monte.Hurst@hallettperrin.com
Elizabeth Fitch
efitch@halletperrin.com

_____*/s/ Carmen Artaza*_____
**Carmen Art**